UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGH J. HARRELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 16-cv-02428-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 11 |

## INTRODUCTION

Plaintiff Hugh J. Harrell ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 10, 11. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and the relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **DENIES IN PART** Defendant's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff was born on September 22, 1970. AR 20. Plaintiff worked as a microcomputer support specialist and was injured on November 2007 while carrying a box server. AR 14, 762. He stopped working on August 20, 2008 due to pain in his neck and lower back. AR 14, 763. In 2009, Plaintiff began receiving serious medical treatment, including multiple surgeries. AR 764. Although these surgeries helped and Plaintiff's pain decreased, he continued to experience pain.

AR 764. Plaintiff also underwent physical therapy, as well as cognitive behavioral therapy for depressive symptoms. AR 764-765. Through the date last insured, December 31, 2013, Plaintiff suffered from lumbar spinal degenerative disc disease and cervical spinal degenerative disc disease, as well as mental impairments. AR 14, 16.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On October 18, 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on August 28, 2008. AR 11, 25. On February 17, 2012, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 11, 23. Plaintiff subsequently filed a request for reconsideration, which was denied on November 14, 2012. AR 11, 23. On January 8, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 11, 26. ALJ Judson Scott conducted a hearing on February 10, 2014 and a supplemental hearing on September 8, 2014. AR 11, 30, 49. At both hearings, Plaintiff testified in person and was represented by counsel, Ashley N. Meyers. AR 11. The ALJ also heard testimony from Frank Barnes, M.D., an orthopedic surgeon medical expert at the first hearing; he also heard testimony from Vocational Expert ("VE") Scott K. Nielson Jr. at both hearings. *Id.*

**A.     Plaintiff's Testimony**

Plaintiff worked as a contractor doing server administration and help desk support at a law firm; he was "essentially an IT person." AR 55. In November 2007, he was injured at work and had a laminectomy, that is, fusion surgery in his neck. AR 56-57, 59 (surgery was at C5 through C7, two levels of fusion). Plaintiff has one disc that is still herniated in his neck, and he will need to have it taken out in the future; his treaters do not want to fuse it because it would be too many fused discs. AR 59-60. Since his injury, he has difficulty standing or sitting for extended periods of time, and has difficulty bending. AR 55; *see also* AR 61 (back pain increases with sitting; after 10-15 minutes of sitting, Plaintiff's pain requires him to stand up). He has nerve-related pain in his arms and back pain 100% of the time at varying levels. AR 57. The pain worsens through the day and he thus requires "longer and longer breaks" throughout the day to alleviate the pain. AR

62. Plaintiff believes he could not work for eight hours a day even with the option to sit and stand at will. AR 62 ("If I have been sitting for a long time, I either have to stand up or lay down. If I'm standing for protracted lengths of time, I typically have to lay down to alleviate the pain for protracted standing. Sitting will not always alleviate the pain from standing."). He has had pain so severe that he has had to lie down for an hour to get enough relief. AR 62-63. In addition to his difficulties sitting, after fifteen minutes of using a keyboard, his neck will start tightening up, and he will either start feeling nerve symptoms in his arms or general pain in his arms and hands. AR 65. His doctor told him to refrain from lifting more than ten pounds. AR 55.

Although the laminectomy eliminated "about 85%" of his leg pain, Plaintiff still experiences numbness in his left foot. AR 57. He struggles with numbness in the right hand and also has problems with his left hand. AR 60.

Plaintiff also testified he suffers from depression and anxiety but agreed that these issues are secondary to his physical problems. AR 57. Psychiatric medication adequately controls his depression and anxiety symptoms, if not entirely. AR 58. He wishes to work full-time again and believes he will be able to do so in the future. AR 56.

### B. Vocational Expert's Testimony

As is relevant here, VE Nielson testified during the September 2014 hearing that the Dictionary of Occupational Titles ("DOT") does not address the issue of sit/stand "in any way." AR 44. Based on his experience and research, discussions with other members of the International Association of Rehabilitation Professionals/Social Security Vocational Expert Division, and a study where employers were surveyed about jobs that could be performed with a sit/stand at will option, the VE testified that telemarketers have the option to sit/stand at will, as can 17% of persons working as "cashier II." AR 44, 46. The VE clarified that telemarketers work in a cubicle, which allows them to stand and walk around in the cubicle while they are working, especially with wireless headsets. AR 44. Some type of cashiers, such as parking lot cashiers, also can walk around in their area to move around a bit. AR 44.

The VE testified the DOT classifies telephone solicitor as a semiskilled job with a specific

vocational preparation ("SVP") of 3 and a sedentary exertion level. AR 45. He identified 9,809 full time telephone solicitor jobs in California and 159,628 in the national economy. AR 45. VE Nielson also testified the DOT classifies cashier II as an unskilled job with an SVP of 2 and a light exertion level. AR 45. He identified 44,653 full time cashier II jobs in California and 412,715 in the national economy. AR 46. However, he stated that the number of cashier II jobs could be eroded by 90% based on the requirement for a sit/stand at will option, thus giving a total of 4,465 full time cashier II jobs in California and 41,271 in the national economy. AR 46.

The VE testified that both jobs would be eliminated if a person could only do occasional reaching, handling, and fingering. AR 46.

### C. Dr. Barnes' Testimony

During the first hearing, the ALJ heard testimony from non-examining medical expert, Dr. Barnes. Dr. Barnes testified Plaintiff met the requirements of Listing 1.04 from March 2008 until May 2010. AR 77. For the year prior to this period, Plaintiff could perform a range of sedentary work, but needed to change positions a few minutes every hour and could not look or reach overhead. AR 79-80. Between June 2010 and the date last insured, Plaintiff could perform sedentary work, but could not look up "for any length of time" and could only occasionally perform over-the-shoulder work and reach overhead. AR 83-84.

### D. Other Evidence

#### 1. Function Report Dated December 12, 2011

In December 2011, Plaintiff submitted a Function Report in connection with his application for disability benefits. *See* AR 375-82. He reported that he prepared a majority of meals for himself and his wife several days per week, washed dishes and swept, drove his dog to the park at least once per day, shopped in grocery stores twice a week for one to two hours, and played board and video games on the computer with his friends.

#### 2. Treatment Records

Plaintiff has extensive medical records documenting his injury and treatment history. *See* AR 481-1237.

4

In relevant part, Plaintiff was treated for two herniated cervical discs, spinal stenosis, kyphosis, and severe radiculopathy. AR 578.

In December 2008, an Electromyogram and Nerve Conduction Study ("EMG/NCS") showed a "normal examination" with "no electrodiagnostic confirmation of bilateral Radial, Median, Ulnar neuropathy; or cervical radiculopathy." AR 531-33.

Plaintiff underwent four surgical procedures on his spine in 2009: diskectomies at C5-6 and C6-7, foraminotomies at those two levels, and fusion at those levels. AR 578. In 2013, Plaintiff underwent a lumbar laminectomy to treat his lumbar stenosis and lumbar radiculopathy. AR 1030.

Approximately ten months after surgery, Plaintiff reported his mobility was back and his pain level had been "greatly reduced." AR 616. In April 2011, he reported mechanical symptoms in his neck had improved. AR 598. One of Plaintiff's treating physicians, Dr. Timothy Lo, examined him in January 2012; he observed Plaintiff had "grossly full" muscle tone and bulk, and full (5/5) strength in his lower extremities. AR 1191. Dr. Lo further reported nerve conduction studies were "grossly normal" and there was no diagnostic evidence of lumbar radiculopathy, focal neuropathy, or polyneuropathy. AR 1193.

Dr. Brendan Morley has treated Plaintiff for pain management since January 2013; he stated Plaintiff has post-laminectomy syndrome-cervical, a chronic lumbosacral condition, and post-laminectomy syndrome-lumbar. AR 1074. Dr. Morley further stated Plaintiff had pain radiating into his arms, back pain aggravated by holding a position for prolonged periods, 5/10 pain, muscle spasms, and 50% reduced range of cervical spine motion. AR 1074. In August 2013, Dr. Morley opined Plaintiff could sit for thirty minutes at a time and stand for 15 minutes at a time; he could sit two hours per total in an 8-hour workday with breaks every thirty minutes, stand for no more than two hours per workday with breaks every thirty minutes, walk less than an hour per workday, handle with his right hand ten percent of the workday, handle with his left hand thirty percent of the workday, finger with his right hand twenty percent of the workday and finger with his left hand thirty percent of the workday, reach with his right arm ten percent of the

workday, reach with his left arm thirty percent of the workday. AR 1076. Dr. Morley further opined Plaintiff needed the option to alternate sitting, standing, and walking positions at will; and needed five-minute unscheduled breaks every thirty minutes. AR 1076. Finally, Dr. Morley stated Plaintiff could rarely look down, turn his head, look up, or hold his head in a static position, and Plaintiff would miss about three days of work per month due to his condition. AR 1074-78.

In October 2013, Plaintiff stated his lower extremity pain had improved by approximately 80% since his surgery. AR 1097.

In March 2014, Dr. Morley opined Plaintiff "would need a job that would preclude[] lifting more than 10 pounds and allowance to alternate between sitting and standing as needed by pain" and that he could not perform prolonged at or above shoulder motions. AR 1230-31.

Plaintiff underwent a bilateral upper extremity electromyography (EMG) in November 2013; it was near normal. AR 1084. A December 2013 MRI of the cervical spine was consistent with stenosis and discopathy, as well as spasm and guarding at the base of the cervical and lumbar spines; a January 2013 lumbar MRI was consistent with lumbar stenosis and foraminal stenosis with spondylosis. AR 1224-25, 1229.

### 3. SSA Consultants

On January 23, 2012, Dr. Charles Combs reviewed Plaintiff's records and completed a Disability Determination Explanation. *See* AR 105-116. As is relevant here, Dr. Combs opined Plaintiff was limited in reaching overhead. AR 113 ("Limit OHR to occasional due to h/o cervical fusion."). Dr. Combs found the evidence did not support limiting Plaintiff to sedentary work; he instead recommended Plaintiff be limited to light work, with some additional limitations. AR 114.

Dr. G. Lee reviewed Plaintiff's records on reconsideration. *See* AR 118-130. "On recon, I have reviewed the evidence in the file and there is no objective evidence to support new or worsened physical condition. . . . I agree with analyst and the prior assessment is affirmed." AR 123. Dr. Lee found Plaintiff's symptoms were not substantiated by the medical evidence alone, and he found Plaintiff's activities of daily living were the factors that were the most informative in assessing the credibility of Plaintiff's statements. AR 125. Dr. Lee found Plaintiff was only

"partially credible" because his subjective symptoms were not supported by objective findings. AR 125. Dr. Lee again found Plaintiff was limited to overhead reaching due to cervical fusion. AR 127. Dr. Lee found Plaintiff's recent pain management examinations showed he ambulated without assistance, "sits comfortably without difficulty or evidence of pain," had normal gait, "[full range of motion] of neck without pain," and strength 5/5. AR 128.

### E. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since August 28, 2008. AR 13.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

7

impairments: cervical spine two-level degenerative disc disease status post two level fusion; lumbar spine two-level degenerative disc disease status post two level discectomy and foraminotomy surgery. AR 14.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 17.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following limitations: lift 10 pounds occasionally, less than 10 pounds frequently; sit 6 hours in an 8-hour day; stand/walk 2-4 hours in an 8-hour day; and can change positions at will between sitting, standing, and walking. AR 17-20.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff could not

perform any past relevant work. AR 20.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that the claimant could perform. AR 20.

### F. ALJ's Decision and Plaintiff's Appeal

On September 24, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 21. This decision became final when the Appeals Council declined to review it on March 1, 2016. AR 1. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On November 4, 2016, Plaintiff filed the present Motion for Summary Judgment. On December 14, 2016, Defendant filed a Cross-Motion for Summary Judgment.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

### A. Summary of the Parties' Arguments

Plaintiff argues substantial evidence does not support the ALJ's decision because the ALJ (1) erroneously evaluated the opinions of Dr. Barnes, (2) did not provide clear and convincing reasons for finding Plaintiff not credible, and (3) did not identify any transferable skills before finding that Plaintiff can work as a telephone solicitor.

The Commissioner responds that the ALJ (1) properly evaluated Dr. Barnes' opinion by giving it "some weight," (2) properly evaluated Plaintiff's credibility based on the record, and (3) was not required to enquire about transferable skills because of Plaintiff's age.

### B. Dr. Barnes' Opinions

Dr. Barnes testified that from August 8, 2008 to March 4, 2009, Plaintiff could not look up, work overhead, or reach overhead; he testified that after June 2010, Plaintiff could not look up for any length of time, could work over the shoulders only occasionally, and could reach overhead only occasionally. AR 80-84. Plaintiff argues the ALJ erred because he did not include any limitations in Plaintiff's RFC that reflected Dr. Barnes' opinions on looking up or working/reaching overhead, and failed to give legally sufficient reasons for rejecting them.

10

The ALJ only gave "some weight" to the opinions of Dr. Barnes because those opinions "credited claimant's subjective complaints beyond the extent of the objective support for those complaints. . . . [T]he claimant is no[t] entirely credible regarding the extent of his subjective complaints." AR 19. But the ALJ did not address Dr. Barnes' findings regarding Plaintiff's limitations in looking up or working/reaching overhead, and did not explain whether he was discounting that opinion specifically. *See* AR 17-20. The limitations in working/reaching overhead and in looking up were supported by the opinions of Drs. Combs and Lee (*see supra* at 6-7), and there is no evidence in the record suggesting these physical limitations, which are caused by Plaintiff's spinal fusions, do not exist. The ALJ failed to provide legally sufficient reasons for rejecting these limitations. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995), *as amended* (April 9, 2006).

During the first hearing, the ALJ posed hypotheticals to the VE that included, among numerous other restrictions, preclusion of overhead reaching; the VE testified that that hypothetical person could not work. AR 93-96. After the first hearing, the VE submitted answers to questions posed by Plaintiff's counsel. *See* AR 468-472. The VE considered a hypothetical individual who was limited in reaching overhead reaching and looking up (among many other limitations). *See* AR 470. The VE answered that such an individual could not perform Plaintiff's past relevant work or any other unskilled work because such an individual would be off-task too frequently. AR 470-72. The VE did not address the overhead or looking up limitations. During the second hearing, the ALJ asked the VE whether a person who was restricted to occasional reaching, handling, and fingering could work as a telephone solicitor or cashier II; the VE testified both jobs would be eliminated if the person could only occasionally reach, handle, and finger. AR 46. Neither the ALJ nor the VE specifically discussed overhead reaching or looking up. Hypothetical questions posed to a VE must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[A]n ALJ is not free to disregard properly supported limitations."). The ALJ failed to include these limitations in the final RFC he used in

11

his decision to find Plaintiff was able to perform work as a telephone solicitor or cashier II. AR 17.

The Court cannot find the ALJ's failure to include limitations in looking up or working/reaching overhead in Plaintiff's RFC was harmless. There is no evidence that a person who was limited to occasionally looking up or working/reaching overhead could perform the work of telephone solicitor or cashier II. Accordingly, the ALJ's findings at Step 5 of the disability analysis are not based on substantial evidence, and the error is not harmless.

**C.     Plaintiff's Credibility**

Plaintiff argues the ALJ did not provide clear and convincing reasons for finding Plaintiff not entirely credible. Specifically, Plaintiff argues that that the ALJ (1) erroneously evaluated medical opinions, (2) improperly evaluated facts in the record concerning timing of the manifestation of Plaintiff's physical limitations, and (3) erroneously evaluated Plaintiff's daily activities. Mot. at 8-10.

1.     Applicable Standard

Where there is no showing that a claimant is malingering, and where the record includes objective medical evidence establishing that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an ALJ can only make an adverse credibility finding based on substantial evidence under the "clear and convincing" standard. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). There is no indication of malingering in the record. Plaintiff has presented objective medical evidence demonstrating that he suffers from cervical degenerative disc disease and lumbar degenerative disc disease, both of which required surgical intervention; the diseases could reasonably produce the symptoms complained of, as buttressed by Dr. Morley's findings. The ALJ's adverse credibility finding therefore must be based on clear and convincing substantial evidence. In addition, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's

credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

An ALJ may consider numerous factors when weighing a claimant's credibility, including "inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, . . . and testimony from physicians . . . regarding the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (internal quotation marks and citations omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Id*.

2. <u>Analysis</u>

The ALJ determined Plaintiff's testimony regarding his limitations (difficulty sitting and standing for extended periods of time, difficulty bending, lingering pain issues, numbness, trouble with his hands, back pain after sitting 15 minutes) was not fully credible. AR 18. The ALJ based his adverse credibility finding on Plaintiff's testimony regarding (1) his subjective complaints that were not supported by objective evidence, as well as improvement of his symptoms following his surgeries, (2) his ability to perform activities of daily living, and (3) the timing of his application for disability benefits. AR 19.

*a. Lack of Objective Evidence*

The ALJ found that Plaintiff's subjective complaints were not supported by objective evidence, as the record indicated that Plaintiff underwent several studies that all showed that he had either normal or near-normal results. AR 19; *see* AR 531, 950, 1089-1093, 1191-1193. Further, Plaintiff confirmed that his pain was decreasing and the injuries were improving to some degree. Treatment notes from 2011 indicate that Plaintiff's neck pain and function had improved since his operation. AR 598, 617. Per Dr. Morley's 2013 notes, Plaintiff also stated that his lower extremity pain had improved by 80% since surgery. AR 1097. The ALJ appropriately considered this objective evidence in making reasonable conclusions about Plaintiff's symptoms and his

13

credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ provided clear and convincing reasons for rejecting claimant's testimony by pointing to specific evidence, including conflict between subjective complaints and objective medical evidence). Dr. Lee also found Plaintiff not fully credible because his subjective complaints were not supported by objective evidence.

Plaintiff argues his subjective pain testimony is supported by Dr. Morley's findings. If a treating source's medical opinion is well-supported and consistent with the other substantial evidence in the case record, it must be given controlling weight. 20 CFR 404.1527. The ALJ gave little weight to Dr. Morley's opinions because physical tests conducted by Dr. Morley indicated normal function, strength, gait, and movement. AR 19; *see* AR 722, 1172. Based on these results, the ALJ found Dr. Morley's opinions as to Plaintiff's physical limitations to be inconsistent with his own treatment notes and examinations, which were "generally indicative of good function," as Plaintiff had normal gait, negative straight leg raise testing, and normal strength testing; the ALJ noted Dr. Morley's opinions regarding Plaintiff's limitations appeared to be based on Plaintiff's subjective complaints rather than objective medical findings. AR 19. A doctor's opinion that is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602.

### b. Daily Activities

The ability to "perform various household chores such as cooking, laundry, washing dishes, and shopping" may constitute a clear and convincing reason to discount a claimant's testimony. *Thomas*, 278 F.3d at 959; *see also Burch*, 400 F.3d at 681 (ALJ may consider activities of daily living when evaluating claimant's credibility). Plaintiff stated that he could perform a range of personal activities that require usage of both his upper and lower extremities, including playing musical instruments and certain sports; taking his dog to the park; doing household chores (laundry, washing dishes, cooking meals, shopping for groceries); reading; playing video games; and performing various errands. AR 375-380. The ALJ found these to be

14

clear and convincing facts that discredited Plaintiff's claims about continuing pain and disability. AR 19. This was a permissible reason to discount Plaintiff's credibility regarding the disabling nature of his impairments. *See Molina*, 674 F.3d at 1113 (activities of daily living "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Thomas*, 278 F.3d at 959; *Burch*, 400 F.3d at 681.

    *c.*  *Timing of Application*

Lastly, Plaintiff argues that the ALJ's consideration of the timing of the disability application is erroneous, asserting that Plaintiff "does not concede non-disability in part by not applying for benefits near an alleged onset date." Reply at 5, Dkt. No. 28. An ALJ may consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the statements and rest of the evidence. 20 C.F.R. § 404.1529(c)(4); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may consider inconsistencies in record to discount credibility). Plaintiff testified his disabling physical limitations began in August 2008, but he did not file for disability benefits until October 2011. AR 14-15. The ALJ could permissibly find Plaintiff's contention he was disabled as of August 2008 inconsistent with this evidence, and could permissibly consider this inconsistency with the rest of the evidence in his evaluation of the claim. The ALJ used this as an additional basis for discounting Plaintiff's credibility; in light of the other reasons identified by the ALJ, any error in doing so was harmless.

    *d.*  *Conclusion*

The ALJ provided specific, clear and convincing reasons based on substantial evidence for finding Plaintiff not fully credible. The ALJ specified and explained that Plaintiff's testimony regarding his personal activities—performance of a "wide range of activities of daily living, including doing errands, playing instruments, talking to family members on the phone, caring for pets including taking his dog to the park, cooking dinner, doing household chores, reading and playing video games, and shopping for groceries"—undermined his testimony concerning the "disabling functional limitations." AR 19. The ALJ explained that this testimony and evidence demonstrated Plaintiff's "physical and mental abilities and social interactions required in order to

obtain and maintain employment." AR 19. The ALJ appropriately considered the statements concerning Plaintiff's ability to perform personal activities in the credibility determination. *Thomas*, 278 F.3d at 959. The ALJ also cited normal EMG/NCS studies to discredit Plaintiff's alleged symptoms and limitations in in arms and legs, including pain, numbness and tingling. AR 19. The ALJ thus did not rely on the type of conclusory, non-specific statement the Ninth Circuit has found inadequate. *See Brown-Hunter*, 806 F.3d at 492-94.

As the ALJ has articulated clear and convincing reasons, based on substantial evidence, to partially discredit Plaintiff's testimony, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

### D. Transferability of Skills

Relying on SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appx. 2, the ALJ explained that transferability of job skills is not material to the determination of Plaintiff's disability because using the Medical-Vocational Guidelines as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable skills from his previous skilled job, because he was forty-three years old at time coverage expired. AR 20. The ALJ considered the Plaintiff's age, education, work experience, and RFC to find that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. AR 20.

Plaintiff argues the ALJ's finding that Plaintiff could work as a telephone solicitor required a formal finding that a claimant has a specific skill transferable to that occupation. Mot. at 11. But transferability of skills is not at issue where a claimant who is limited to sedentary work is a younger individual (age 18-44), with at least a high school education, and whose previous work experience was skilled or semi-skilled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.00(h)(2) ("For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work. It is usually not a significant factor in limiting such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work. . . ."); *see also Applegate v. Comm'r Soc. Sec. Admin.*, 2015 WL 1825405, at *8 (D. Or. Apr. 22, 2015) (transferability of skills is immaterial where using Guidelines as framework, 51 year-old who

16

could perform light work would be considered not disabled whether she had transferable skills or not); *Waite v. Astrue*, 2010 WL 5224137, at *3 n.2 (C.D. Cal. Dec. 15, 2010) (explaining Rule 201.28 directs a finding of not disabled under these circumstances where claimant has no transferable skills). Plaintiff's reliance on *Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1225 (9th Cir. 2009), is misplaced. Transferability of skills was dispositive in *Bray* because the claimant was fifty-five years old, not a "younger individual" as Plaintiff was when his coverage expired. *Id.* at 1229; *see also Applegate*, 2015 WL 1825405, at *8 (distinguishing *Bray* on same basis: "In *Bray*, however, the issue of transferability of skills was dispositive because the claimant was of advanced age, and under the Medical Vocational Guidelines, she would be found disabled *unless* she had readily transferable skills" (emphasis in original)).

The Court finds that the ALJ did not err and appropriately found the transferability of Plaintiff's job skills immaterial to the determination of Plaintiff's disability when his coverage expired.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **DENIES IN PART** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings in accordance with this Order.

The Court will enter a separate judgment in accordance with Federal Rules of Civil Procedure 54 and 58.

**IT IS SO ORDERED.**

Dated: April 25, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

17